# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                         Plaintiff,

-vs-                                                    Case No.  6:06-cv-137-Orl-19KRS

EDWARD S. DIGGES, JR.,  NEXSTAR
COMMUNICATIONS, LLC, TMT
EQUIPMENT COMPANY, LLC, TMT
MANAGEMENT GROUP, LLC, POSA,
LLC, POSA TMT, LLC, TELEVEST
COMMUNICATIONS, LLC, TELEVEST
GROUP, LLC, SPIN DRIFT, LLC,

                         Defendants.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motion filed

herein:

| MOTION: | RECEIVER'S FIRST INTERIM APPLICATION FOR FEES AND COSTS THROUGH MAY 31, 2006 (Doc. No. 76) |
|---|---|
| FILED: | September 18, 2006 |

        The court-appointed Receiver moves for an award of attorney and other professional fees

incurred between February 14, 2006 and May 31, 2006.  Doc. No. 76.  In support of the motion,

the Receiver submitted time sheets from his law firm, doc. no. 76-2 (Carlton Fields time sheets), a

summary of documents prepared and filed by the Receiver in this case and an ancillary proceeding,

doc. no. 76-3 (Receiver Summary), time sheets from the forensic accountancy firm retained by the

Receiver, doc. no. 76-4 (Kapila time sheets), and time sheets from local counsel in Maryland, doc.

no. 76-5 (WCS time sheets).  Defendant Edward S. Digges has filed a response in opposition.

Doc. No. 78.  The matter is ripe for review, and has been referred to me for issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      PROCEDURAL HISTORY.

On February 2, 2006, the SEC filed a complaint seeking injunctive relief, disgorgement,

and penalties for alleged violations of the securities laws against Digges, a former attorney, and

various entities controlled by Digges.  Doc. No. 1.  The same day, the SEC filed an emergency

motion requesting the imposition of a temporary restraining order and the appointment of a

receiver.  Doc. No. 2.

On February 14, 2006, the SEC filed a document signed by Digges on behalf of himself

and the defendant entities that consented to the entry of a restraining order and the appointment of

a receiver.  Doc. No. 13.  The Court then entered an Order that, among other things, permanently

enjoined Digges and the defendant entities from violating the securities laws, froze the assets of

Digges and the defendant entities, and appointed a receiver for the other entities.  Doc. No. 15.

Thereafter, the Receiver retained legal counsel in both Florida and Maryland, where many

of the assets are located, and a forensic accountancy firm to review the financial transactions in

question.  The Receiver took possession of the books and records of the receivership entities,

issued subpoenas to banks holding funds from the receivership entities, and analyzed financial and

other records related to the receivership entities.  He filed an ancillary action against Digges, other

entities controlled by Digges, and persons, including some of Digges's family, alleged to have

participated in the alleged securities violations, and has taken discovery in that action.  The

Receiver recorded notices of *lis pendens* in the various districts where property is located.  The

Receiver has also spoken with investors and set up a website for the receivership.  *See* Doc. No. 33

(First Report of the Court-Appointed Receiver); *Silver v. Digges*, Case No. 6:06-cv-290-Orl-

19DAB.

## II.     STANDARD OF REVIEW.

The order of appointment provides that "the Receiver and any person engaged or employed

by the Receiver, are entitled to reasonable compensation from the assets of the Receiver Estate,

subject to the prior approval of the Court." Doc. No. 15 at 13. Using bankruptcy law as an

analogy, a receiver is entitled to be reimbursed for the actual and necessary expenses incurred in

preserving the estate.  A receiver is also entitled to reasonable compensation for professional

services rendered based on the time, nature, extent, and value of such services, and the cost of

comparable services as well as the actual, necessary expenses incurred by the professional.  *Cf.*

11 U.S.C. §§ 330, 503(b)(3)(D), (b)(4) (administrative expenses in bankruptcy proceedings).

A claim for receivership expenses must be supported by sufficient information for the

Court to determine that the expenses are an actual and necessary cost of preserving the estate.  *Cf.*

*In re F.A. Potts & Co., Inc.* 114 B.R. 92, 94 (E.D. Pa. 1990)(U.S. government sought

administrative costs in a bankruptcy proceeding).  Claims for professional services, similarly,

must be supported by evidence that the hourly rate is reasonable and commensurate with rates

paid for similar services and that the time expended was reasonable.  *See Norman v. Hous. Auth.,*

836 F.2d 1292 (11th Cir. 1988); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

**III.    ANALYSIS.**

    *A.    Professional Fees*.

    There are many problems with the application for payment of fees.

    With respect to the hourly rates sought by counsel, some of the rates far exceed those which would be reasonable in the Central Florida market, including $460.00 per hour for an attorney practicing in South Florida with 26 years of experience.  Work was also performed by individuals whose background, experience and customary hourly rates are not provided, including both professionals working from the Maryland law firm and Lenny Goldstein, Jeff Morrissey, Renee Kemper, Elena Brown, Donna Mace, Maureen Murray, Nilsa Baskerville, and Mary Tiedeken working with Carlton Fields.

    With respect to the fees of the accountants, there also is insufficient information to assess a reasonable hourly rate for the work of these individuals.  Other than providing the date that the various accountants became licensed, no information is provided about the customary hourly rate for the work of individuals with similar training and experience other than the conclusory statement that "[t]he Applicant believes that the compensation sought herein is consistent and similar to other awards in proceedings of this nature."  Doc. No. 76-4 at 12.

    Turning next to the reasonable number of hours worked, the records reflect that some of the work performed is nonreimburseable clerical or administrative work not reasonably performed by an attorney or other professional.  This includes preparing notices of cancellation of depositions, contacting court reporters, mailing, filing, or otherwise delivering or picking up

documents, and the like.  *See, e.g.*, *Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ([T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney.  Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses.") (internal quotations omitted); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").  Similarly, the Receiver has made no showing that establishing a website for the Receiver is a task reasonably compensable at the hourly rate of an attorney or paralegal.

Finally, but most importantly, the Receiver seeks reimbursement of $234,959.00 in fees, which, as the Receiver concedes, exceeds the current assets in the receivership estate.  Doc. No. 76 at 7 n.1.  "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant.'"  *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (internal citations omitted).

While time was necessarily reasonably expended in marshaling the assets of the receivership estate, the Court cannot approve payment of fees in excess of the funds available.  Moreover, it is important for the Court to weigh the results obtained by the Receiver against any fee request to determine whether the fees should be reduced if the Receiver is not able to recover significant funds for the receivership estate.  Indeed, it is the Receiver's responsibility to ensure that the work of attorneys and other professionals is limited to that necessary to the assigned task and as economical as possible to perform the task in order to protect the assets of the receivership

estate, rather than employing a cadre of professional assistants whose fees, at least at present, exceed the receivership's ability to pay.

    B.  *Out-of-Pocket Expenses.*

   With respect to reimbursement of out-of-pocket expenses, counsel for the Receiver seeks reimbursement in the amount of $13,018.70; Maryland counsel seeks reimbursement in the amount of $701.20; and the Receiver's accountant seeks reimbursement in the amount of $2,491.86.

   The expenses of the Receiver's attorneys are set forth in a list at the end of the time sheets. Even assuming that these expenses were those actually incurred and paid, there is insufficient information to assess whether they were reasonably necessary. Indeed, some of the expenses may not be compensable, such as secretarial overtime. *See, e.g., In re Hillsborough Holdings Corp*, 127 F.3d 1398, 1403-04 (11th Cir. 1997)(permitting secretarial overtime and computer research costs if the billing professionals make a practice of billing for such items and adjust their hourly rates accordingly as compared with professionals who absorb the costs as part of their overhead). Other expenses, such as for "litigation support," must be supported by a showing that these were actual costs incurred, not administrative charges often assessed by law firms to clients that are not directly related to the actual costs incurred. *See Lang v. Reedy Creek Improvement Dist.*, Case No. 94-693CIVORL3ABF(17), 1997 WL 809200 (M.D. Fla. Dec. 23, 1997)(disallowing, among other things, law firm's routine charge for facsimiles that was unrelated to actual cost).

   As for the expenses sought by the accountants, there is a summary sheet and listing of the expenses by expense code, but no description of what the expense code represents. Absent more complete information regarding the reason for the expenditures, it is not possible to determine whether they were necessarily incurred.

**IV.     RECOMMENDATION**.

Based on the foregoing, I respectfully recommend that the Receiver's First Interim Motion for Fees and Costs through May 31, 2006, be **DENIED without prejudice**.   I further recommend that the Receiver be instructed not to include in any future fee applications the fees and costs incurred in preparing the present application because it was inadequate on its face as discussed in the report and recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 7, 2006.

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy