# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

-vs-                                Case No.  6:06-cv-137-Orl-19KRS

EDWARD S. DIGGES, JR.,  NEXSTAR
COMMUNICATIONS, LLC, TMT
EQUIPMENT COMPANY, LLC, TMT
MANAGEMENT GROUP, LLC, POSA,
LLC, POSA TMT, LLC, TELEVEST
COMMUNICATIONS, LLC, TELEVEST
GROUP, LLC, SPIN DRIFT, LLC,

                    Defendants.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **RECEIVER'S RENEWED FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES FOR FEBRUARY 14, 2006 THROUGH MARCH 31, 2007 (Doc. No. 134)** |
| **FILED:** | **July 6, 2007** |

## I.     PROCEDURAL HISTORY.

On February 2, 2006, the SEC filed a complaint seeking injunctive relief, disgorgement, and penalties for alleged violations of the securities laws against Digges, a former attorney, and various entities controlled by Digges.  Doc. No. 1.  On the same day, the SEC filed an emergency motion requesting the imposition of a temporary restraining order and the appointment of a receiver.  Doc. No. 2.  The SEC estimated that the loss to the victims of the alleged fraud is $20 million.  Doc. No. 107 at 8 n.3.

On February 14, 2006, the SEC filed a document signed by Digges on behalf of himself and the defendant entities that consented to the entry of a restraining order and the appointment of a receiver.  Doc. No. 13.  The Court then entered an order that, among other things, permanently enjoined Digges and the defendant entities from violating the securities laws, froze the assets of Digges and the defendant entities, and appointed a receiver for the other entities.  Doc. No. 15.

Thereafter, the Court-appointed Receiver retained legal counsel in both Florida and Maryland, where many of the assets are located, as well as a forensic accountancy firm to review the financial transactions in question.  The Receiver took possession of the books and records of the receivership entities, issued subpoenas to banks holding funds from the receivership entities, analyzed financial and other records related to the receivership entities, and filed an ancillary action against Digges, other entities controlled by Digges, and persons, including some of Digges' family, alleged to have participated in the alleged securities violations, and has taken discovery in that action.  The Receiver has also recorded notices of *lis pendens* in the various districts where property is located.  The

Receiver has spoken with investors and set up a website for the receivership. *See* Doc. No. 33 (First Report of the Court-Appointed Receiver); *Silver v. Digges*, Case No. 6:06-cv-290-Orl-19UAM.

On September 18, 2006, the Receiver filed his first application for fees and costs incurred between February 14, 2006 and May 31, 2006. Doc. No. 76. In that motion, the Receiver sought compensation for fees incurred by the Receiver, the Receiver's attorneys, the Receiver's forensic accounts, and the Receiver's local counsel in Maryland. *Id.* Digges filed a response to the motion objecting to the Receiver's management of defendant entities, but did not raise objections to any specific hourly rates or billing entries. Doc. No. 78. A Report and Recommendation was issued recommending that the Receiver's motion for fees be denied without prejudice, doc. no. 96, but was withdrawn on January 9, 2007, doc. no. 103, after the Receiver withdrew his motion, doc. no. 100.

On March 15, 2007, the Court approved a settlement between the Receiver and non-parties Edward Golodetz, EMG Associates, Inc., Gateway I, LLC, and Deborah Golodetz. Doc. No. 118. As a result of this settlement, $1.3 million has been deposited into the Court's Registry. Doc. Nos. 123, 126. Additionally, the Receiver has filed a motion for approval of a settlement with non-party Richard F. McGonnigal, indicating that claims against McGonnigal have been settled for payment in the amount of $50,000.00. Doc. No. 145. The Receiver has also filed a notice indicating that a settlement has been reached between the Receiver and Defendant Digges, and non-parties Chilham LLC, KBK Partnership LLP, Katherine Kerr, K. Brigid Peterson, J. Bruce McGonnigal, and K. Brett McGonnigal. Doc. No. 138. The receiver suggests that, if approved, this settlement will result in the parties paying $1,150,000.00 to the Receiver Estate. Doc. No. 134 at 6.

I have recommended that the Receiver be authorized to pay the forensic accountancy firm $332,189.90 in fees and $4,031.72 in costs. Doc. No. 156. I have further recommended that the Receiver be authorized to pay his counsel in Maryland $3,896.00 in fees and $2,154.86 in costs. Doc. No. 157. If approved, these payments will deplete the receivership estate by the total amount of $342,272.48.

In the present motion, the Receiver moves for authorization to pay his fees and expenses and those of his Florida counsel for the period between February 14, 2006 and March 31, 2007. In support of the motion, the Receiver filed the following documents:

- The Court's March 15, 2007 Order approving the settlement with Edward Golodetz, EMG Associates, Inc., Gateway I, LLC, and Deborah Golodetz, doc. no. 134-2 (previously docketed as doc. no. 118);

- Receipts from transactions depositing funds into the Court's registry, doc. no. 134-3;

- Affidavit of Soneet R. Kapila, doc. no. 134-4 (previously filed at doc. no. 107-7);

- A time sheet of work performed and expenses incurred by the Receiver and his attorneys, doc. no. 134-5 (Carlton Fields time sheets); and

- Biographical materials about the Receiver and his attorneys (Carlton Fields professional biographies), doc. no. 134-6.

- Order entered in *SEC v. W.L. Ware Enterprises & Investments, Inc.,* Case No. 6:04-cv-112-Orl-18UAM, doc. no. 157-2 (hereinafter *Ware*).

The SEC supports the requested relief, stating that "the fees and expenses incurred by the Receiver and by the attorneys and accountants engaged by him are reasonable." Doc. No. 142. Defendant Digges has not responded to the motion as of the writing of this Report and Recommendation, and the time for doing so has passed.

II.        APPLICABLE LAW.

>   The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e
>   is . . . permitted to obtain counsel for himself, and counsel fees are considered as
>   within the just allowances that may be made by the court. . . . So far as the allowances
>   to counsel are concerned, it is a mere question as to their reasonableness. . . . The
>   compensation is usually determined according to the circumstances of the particular
>   case, and corresponds with the degree of responsibility and business ability required
>   in the management of the affairs intrusted to him, and the perplexity and difficulty
>   involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).  A receiver owes a duty to exercise reasonable care

to protect and preserve the assets of the receivership estate.  In carrying out this duty, the receiver

"must exercise ordinary care and prudence, that is, the same care and diligence that an ordinary

prudent person would exercise in handling his or her own estate, or under like circumstances."  65

Am. Jur. 2d *Receiver* § 146 (2007).

In determining a reasonable fee for a receiver and his attorneys, "[a] basic consideration is the

nature and complexity of the legal problems confronted and the skill necessary to resolve them."  *SEC*

*v. W.L. Moody & Co.*, 374 F. Supp. 465, 485 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)

(hereinafter *Moody*).  "Although time is a material factor, the difficulty of the job, the expertise

necessary to accomplish it, and the results achieved are more significant here."  *Id.* at 486.

Many courts begin the analysis with the lodestar approach, which is based on the reasonable

hourly rate in the relevant market of the professionals for whom fees are sought and the reasonable

number of hours expended.   *See, e.g., FTC v. Peoples Credit First, LLC,* No. 8:03cv2353T17TBM,

2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006)(citing *Johnson v. Ga. Highway Express, Inc.*,

488 F.2d 714, 717-19 (5th Cir. 1974)); *see also SEC v. Goren*, 272 F. Supp. 2d 202, 207 (E.D.N.Y.

2003).  Claims for professional services must be supported by evidence that the hourly rate is

reasonable and commensurate with rates paid for similar services, and that the time expended was reasonable. *See Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

Similarly, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate. *See Peoples Credit First, LLC*, 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).   Expenses should be limited to the actual out-of-pocket costs, sans profit, and should not include overhead expenses such as secretarial overtime, mileage and the like. *See Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12; *cf. Lang v. Reedy Creek Improvement Dist.*, No. 94-cv-693-Orl-19, 1997 WL 809200 (M.D. Fla. Dec. 23, 1997)(finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit).

"No receivership is intended to generously reward court-appointed officers." *Moody*, 374 F. Supp. at 483.   Both a receiver and his counsel must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary irrespective of the amount of money in the receivership estate. *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4.   This is particularly true when, as in the present case, the receivership estate will not recover sufficient assets to pay restitution to the victims of the fraud alleged in the complaint. *See id.* at *5.

III.    ANALYSIS.

 A.    *Receiver's Fees*.

      1.    Reasonable Hourly Rate.

James D. Silver, Esq.,[1] was appointed Receiver at the recommendation of the SEC.  *See* Doc. No. 2 at 3.  He has been a practicing attorney for 25 years since his graduation from law school in 1982.  He has practiced in the area of bankruptcy and creditors' rights for 20 years.  Doc. No. 134 at 17; Carlton Fields professional biographies at 1.  He has served as lead counsel to a receiver in two cases in the United States District Court for the Southern District of Florida.  He has also lectured on receivership issues at the Florida Receiver's Forum.  Doc. No. 134 at 17.

Silver has performed work both as a Receiver and as an attorney in this case.  He submits that it "would not be productive or meaningful" to attempt to separate the work performed in these different capacities.  Doc. No. 134 at 2 n.2.  Accordingly, in the present motion, he seeks an hourly rate of $335.00 for all of his work.[2]  He submits that this is a "blended hourly rate."  Doc. No. 134 at 21.

Generally, a receiver will not be paid the hourly rate of a partner in a law firm for administrative work done in his capacity as a receiver.  *See, e.g., Goren*, 272 F. Supp. 2d at 208. The proposed "blended hourly rate" will overcompensate Silver for the work he performed as a receiver,

---

[1] In approximately October 2007, Silver left the employment of Carlton Fields, P.A. and joined the law firm of Conrad & Scherer, LLP.  Doc. No. 148.  *See also* Conrad & Scherer, LLP, http://www.conradscherer.com (last visited Nov. 15, 2007).  For purposes of this motion, Silver will be referred to as a member of Carlton Fields, P.A.

[2] I note, however, that in the Carlton Fields time sheets, Silver's hourly rate is $335.19. Carlton Fields time sheets at 1.

rather than as a lawyer.  *Cf.  Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.13 (requiring Receiver to provide justification for his work as an attorney rather than relying on less costly attorneys from his law firm).  I conclude that $225.00 per hour is a reasonable hourly rate for Silver's work as Receiver.  *See, e.g., FTC v. Peoples Credit First, LLC,* Case No. 8:03-cv-2353-T-TBM, 2006 U.S. Dist. LEXIS 63916, at *3 n.1 (Receiver $225.00 hourly rate).[3]

Because Silver has chosen not to separate his work as the Receiver from the work as an attorney, I recommend that the Court allow him the reasonable rate for his work as a Receiver for all reasonable hours worked.  If, in subsequent applications for fees for work perform after March 31, 2007, Silver wishes to be compensated at a higher rate for his work as an attorney, he should separately describe that work and provide justification for that work rather than relying on less costly attorneys from his law firm, or SEC attorneys when appropriate,[4] to perform the legal work.

    2.    <u>Reasonable Number of Hours</u>.

Silver seeks compensation for 1026.20 hours worked between February 14, 2006, and March 31, 2007.  He describes the work performed in the time sheets submitted with the motion.  Based on

---

[3]  The Receiver filed an order entered in *Ware*, which is another SEC receivership case pending in this Court.  Review of the full docket in *Ware* reveals that the Court did not address the issue of whether the administrative work of a receiver should be paid at a lesser rate than the legal work performed by an attorney, who is also the receiver.  Accordingly, I do not find *Ware* persuasive regarding the rate to pay a receiver for his work as a receiver, rather than as a lawyer.

[4]  To the extent that SEC attorneys were involved, such as at court hearings or during depositions, the Receiver should also explain why his presence at these matters was necessary and not duplicative of the work performed by SEC attorneys.  I assume, for purposes of the present motion, that unless otherwise indicated, another attorney from his law firm or the SEC was not involved in the various depositions that Silver indicates he conducted.  If this assumption is incorrect, the Receiver shall so advise the presiding district judge in a response to this Report and Recommendation.

my review of the time sheets, I find that the time Silver worked on the described tasks was reasonable, in the absence of objection.

        3.    <u>Lodestar</u>.

The number of hours worked by Silver (1026.20) multiplied by his reasonable hourly rate as a Receiver ($225.00) results in a lodestar fee of $230,895.00.

        B.    *Fees of Counsel to the Receiver.*

The Receiver employed lawyers and other professionals in his law firm as his legal counsel in the case at a proposed blended rate. Because a blended rate does not account for the skill and experience of the particular professional and the task performed, the better approach is to assess reasonable hourly rates for each individual. Therefore, I will address the reasonable rates for each of the attorneys and other staff who performed work in this matter. I will then address whether the requested hours are reasonable.

        1.    <u>Reasonable Rate</u>.

        **a.    Attorneys.**

Roger S. Goldman, a shareholder at Carlton Fields, graduated from law school in 1980. Carlton Fields professional biographies at 7-8. Goldman practices in the areas of real estate and finance. *Id.* at 7. Prior to joining Carlton Fields, he was general counsel to a financial corporation. *Id.* at 8. Goldman seeks an hourly rate of $395.00 an hour. Carlton Fields time sheets at 1. I note that Goldman, along with most of the other Receiver's attorneys in this case, are located at Carlton Fields' Miami office. Consequently, the hourly rates sought by the Receiver's attorneys are, in my experience, more consistent with the higher hourly rates charged in the South Florida market than with

those charged in the relevant Central Florida market. *See Brother v. Int'l Beach Club Condo, Ass'n, Inc.*, No. 6:03-cv-444-Orl-28DAB, 2005 WL 1027240, at *6 (M.D. Fla. April 28, 2005).  This Court has previously awarded an attorney with over thirty years of experience an hourly rate of $370.00.  *See Kolcynski v. United Space Alliance, LLC*, No. 6:04-cv-716-Orl-18KRS, 2006 WL 3614919, at *4 (M.D. Fla. Dec. 11, 2006).  Accordingly, I find the reasonable hourly rate for Goldman's work to be $370.00 per hour.

Robert N. Gilbert, a shareholder at Carlton Fields, graduated from law school in 1980.  Carlton Fields professional biographies at 13-14.  Gilbert's practice focuses on bankruptcy law.  *Id.* He seeks an hourly rate of $390.00.  Carlton Fields time sheets at 1.  In accordance with the recommended award to Goldman, I find the reasonable hourly rate for Gilbert to be $370.00 per hour.

Jose A. Loredo graduated from law school in 1986 and is a shareholder of the firm.  Carlton Fields professional biographies at 11-12.  Loredo has over 20 years of business litigation experience, especially in the area of real estate contracts.  *Id.* at 11.  He is seeking an hourly rate of $390.00. Carlton Fields time sheets at 1.  This Court has previously held that an award of attorney's fees of $325.00 per hour to be reasonable for an attorney with 16 years of experience with significant relevant skills and experience.  *SEC v. W.L. Ware Enterprises & Investments, Inc.*, Case No. 6:04-cv-112-Orl-18UAM, doc. no. 123 at 4.  Accordingly, I find that a reasonable rate for Loredo's work is $ 325.00 per hour.

Niall T. McLachlan graduated from law school in 1995 and is a shareholder of the firm. Carlton Fields professional biographies at 10. McLachlan's practice focuses on representing creditors and litigating matters involving the UCC.  *Id.*  His work in this case was limited to recording a

certified copy of the receivership in Maryland.  Carlton Fields time sheets at 7-8.  He seeks an hourly rate of $265.00.  *Id.* at 1.  The reasonable rate for an attorney with 8 to 15 years of experience in this market is between $185 and $265.  *Brother*, 2005 WL 1027240, at *6.  In light of the work performed in this case, I find the reasonable rate for McLachlan's work to be  $185.00 per hour.

Donna K. Knapton has practiced in the area of securities for over 10 years since graduating from law school in 1996.  Doc. No. 134 at 18; Carlton Fields professional biographies at 4-6.  Upon graduation from law school, Knapton worked for the SEC in the division of enforcement at the SEC's headquarters in Washington, D.C. and at the SEC's regional office in Miami, Florida.  Carlton Fields professional biographies at 4.  In 1999, she became senior counsel with the SEC.  *Id.*  She received an LL.M. in Securities and Financial Regulation in 2000.  *Id.* at 6.  She has been in private practice at Carlton Fields for approximately one year, where she practices in the areas of business litigation and trade regulation.  *Id.* at 4.  Knapton seeks an hourly rate of $270.00, which is her typical billing rate "regardless of case or client locale."  Carlton Fields time sheets at 1; doc. No. 134 at 21.  Based on the case law cited above and my familiarity with the Central Florida legal market, in the absence of objection, I find her reasonable hourly rate, in light of her expertise in securities matters, to be $220.00 per hour.

Michael A. Shafir graduated from law school in 2003 and is an associate of the firm.  Doc. No. 134 at 18; Carlton Fields professional biographies at 2-3.  He practices in the areas of real estate and commercial and business-related litigation.  Doc. No. 134 at 18; Carlton Fields professional biographies at 2.  He seeks an hourly billable rate of $234.30.  Carlton Fields time sheets at 1.  The Receiver indicates that Shafir usually charges his clients an hourly rate of $260.00 for his services.

Doc. No. 134 at 21.  In the central Florida market, the Court has found that a reasonable rate for an associate with 1 to 4 years of experience is between $125 and $165.  *Brother*, 2005 WL 1027240, at *6.  As Shafir has approximately 4 years of experience since graduating from law school, based on my familiarity with the Central Florida legal market and previous awards of attorney's fees from this Court,  I find his reasonable rate to be $165.00 per hour.

Kasey L. Peake graduated from law school in 2004 and is an associate of the firm.  Carlton Fields professional biographies at 9-10.  She practices in the areas of business litigation, trade regulation and insurance.  *Id.* at 9.  She seeks an hourly rate of $200.16.  Carlton Fields time sheets at 1.  Based on my familiarity with the Central Florida legal market and the previously cited case law, I find the reasonable hourly rate for Peake's work to be $150.00 per hour.

Karen L. Persis graduated from law school in 2004 and is an associate of the firm.  Carlton Fields professional biographies at 19.  She is a member of the firm's construction practice group and the business litigation and trade regulation practice group.  *Id.*  She is seeking an hourly rate of $190.50.  Carlton Fields time sheets at 1.  For the reasons stated above, I find the reasonable hourly rate for Persis's work to be $150.00 per hour.

Olga M. Vieira graduated from law school in 2006 and is an associate at the firm.  Carlton Fields professional biographies at 15.  She is in the firm's products and toxic tort liability practice group.  *Id.*  She seeks an hourly billable rate of $200.00.  Carlton Fields time sheets at 1.  I  find that a reasonable hourly rate for an attorney with Viera's limited experience is $125.00 per hour.

**b.      Law Clerks and Paralegals**.

David L. Luck was a law clerk at Carlton Fields in 2006.  Carlton Fields professional biographies at 20.  He graduated from law school in May 2007.  *Id.*  He seeks an hourly billable rate of $140.00.  Carlton Fields time sheets at 1.  His work on this case was limited to conducting research concerning limited appearances, defaults, and pro hac vice admissions.  Carlton Fields time sheets at 36-37.  The reasonable rate for a law clerk in the relevant Central Florida market is between $85.00 and $100.00.  *Brother*, 2005 WL 1027240, at *6.  Based on the work performed, I find that a reasonable rate for Luck's work is $85.00 per hour.

Christopher R. Clark was a law clerk for the firm in 2006.  Carlton Fields professional biographies at 21.  He anticipates graduating law school in May 2008.  *Id.*  He seeks an hourly billable rate of $140.00.  Carlton Fields time sheets at 1.  For the reasons stated above, I find that a reasonable rate for Clark's work is $75.00 per hour.

Leonard Goldstein is a paralegal with over 21 years of experience.  Carlton Fields professional biographies at 20.  He has obtained a Juris Doctor degree.  *Id.*  He seeks an hourly billable rate of $170.00.  Carlton Fields time sheets at 1.  The reasonable rate for a paralegal in the Central Florida market is between $75.00 and $95.00.  *Brother*, 2005 WL 1027240, at *6.  Accordingly, I find that a reasonable rate for Goldstein's work is $95.00 per hour.

Soraida Smith is a paralegal who has worked in the legal field for over 22 years.  Carlton Fields professional biographies at 20.  She has obtained a Certificate in Paralegal Studies.  *Id.*  An hourly rate of $113.06 is requested for her work.  Carlton Fields time sheets at 1.   I find that a reasonable rate for Smith's work is $90.00 per hour.

Maureen Murray is a paralegal with Carlton Fields. Carlton Fields professional biographies at 20. She has 15 years of experience as a paralegal, and has worked in the legal field for over 25 years. *Id.* She holds a Bachelor of Science degree in Secretary Science. *Id.* An hourly rate of $170.00 is requested for her work. Carlton Fields time sheets at 1. I find that a reasonable hourly rate for her work is $90.00 per hour.

Elena Brown was a paralegal with the firm from March 2004 to June 2006. Carlton Fields professional biographies at 20. She has obtained a Bachelor of Science degree and a paralegal certification. She has over 12 years of paralegal experience. *Id.* An hourly billable rate of $165.00 is requested for her work. Carlton Fields time sheets at 1. Based on the case law cited above, I find that a reasonable rate for her work is $90.00 per hour.

Elizabeth Poveda is a paralegal with Carlton Fields. Carlton Fields professional biographies at 20. The Receiver has failed to indicate how long she has held that position. *Id.* Before working as a paralegal, she was a paralegal assistant for more than 6 years. *Id.* An hourly rate of $165.00 is requested for her work. Carlton Fields time sheets at 1. As the Receiver has not presented evidence concerning how long she has worked as a paralegal, the reasonable hourly rate for her work is $75.00, which is at the low end of the range of rates reasonable for paralegals in the Central Florida market.

**c.      Miscellaneous Support Personnel**.[5]

Jeffrey Morrissey is a practice technology support analyst for the firm. Carlton Fields professional biographies at 21. He has been in that position for 2 years and in the field of information

---

[5] If the Receiver renews the request for fees for the work of individuals in this category, he shall specifically address why their services should not be compensated at the actual out-of-pocket expense (salary or hourly rate paid), rather than as a professional fee.

technology for more than 14 years.  In this case, his work centered around setting up and maintaining the Receiver's website.  Carlton Fields time sheets.  No information has been provided concerning the rate he is actually paid for his services or the amount that Courts have previously awarded an individual in his position.  An hourly rate of $127.82 is requested for his work.  Carlton Fields time sheets at 1.  Because the Receiver has not sustained his burden of presenting evidence to support the fee requested for Morrissey, I recommend that no fees be awarded for his work.

Nilsa Baskerville is a practice technology support coordinator for the firm.  Carlton Fields professional biographies at 21.  She has been in the information services field for over 20 years.  *Id.* An hourly billable rate of $190.00 is requested for her work.  Carlton Fields time sheets at 1.  As with Morrissey, because the Receiver has not sustained his burden of presenting evidence to support the fee requested for Baskerville, I recommend that no fees be awarded for her work.

Marcia Morelli is a research librarian for Carlton Fields.  Carlton Fields professional biographies at 21.  She has worked in the library field for 40 years, and in law libraries for 20.  *Id.*  She holds a Bachelor of Science degree in Library Science.  *Id.*  Morelli's work in this case consisted of performing research concerning Digges' South Carolina properties, and obtaining names, addresses and telephone numbers of neighbors to such properties, for a total of 0.6 hours.  Carlton Fields time sheets at 72.  The Receiver has provided no information concerning the amount that Morelli was actually paid for her services.  An hourly rate of $170.00 is requested for her work.  Carlton Fields time sheets at 1.  Due to the lack of information necessary to establish a rate for Morelli's work, I recommend that no fees be awarded for her work.

### d.   Clerical Workers.

Annika Miranda was a document clerk for the firm.  Carlton Fields professional biographies at 21.  An hourly billable rate of $30.00 is requested for her work.  Carlton Fields time sheets at 1. Miranda's job falls within the category of clerical or administrative work that is part of the overhead of the firm and not compensable.  *See Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12. Accordingly, I recommend that no fees be awarded for her work.

The time sheets also contain entries for work performed by "client tech support."  Carlton Fields time sheets.  Some of this work was performed by Morrissey or Baskerville, but in some entries there is no indication as to who performed the work.  The work of tech support personnel also falls within the category of clerical or administrative work that is part of the overhead of the firm and not compensable.  Accordingly, I recommend that no fees be awarded for this work.

### 2.   Reasonable Number of Hours.

The next issue is whether the number of hours worked are reasonable.  The Receiver submitted time sheets describing the work performed by each of the individuals for whom fees are sought.

Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, or otherwise delivering documents does not qualify as compensable hours.  *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney.  Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses.") (internal quotations omitted); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10

(1989)("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Paralegal Murray performed many clerical tasks that are not compensable, such as opening mail, creating files, and following up on correspondence to courts. *See* 2/21/06 0.30 hours (prepared files); 2/28/06 0.60 hours (follow-up with courts); 03/03/06 0.30 hours (review investor correspondence and create files); 03/06/06 0.40 (prepare production log to track documents); 03/13/06 0.20 hours (prepare files); 03/13/06 0.30 hours (review and organize correspondence to Receiver); 03/20/06 0.40 hours (review and organize correspondence and other documents); 03/20/06 0.60 hours (review and organize correspondence and other documents); 03/24/06 0.30 hours (review and organize mail); 8/04/06 0.40 (receive and organize documents received from courts). Accordingly, I recommend that no fees be awarded for this work, which totals 3.8 hours.

Murray also recorded 0.60 or 0.70 hours each time she prepared, revised, and finalized a letter to a Clerk of Court to register the order appointing the receiver. *See* 2/21/06 (two entries); 2/22/06 (five entries); 2/27/06 (one entry). She also recorded 0.30 hours for each initial telephone conference with an investor. *See* 2/27/06 (two entries); 2/28/06 (two entries); 3/3/06 (one entry); 3/6/06 (two entries); 3/7/06 (three entries); 3/10/06 (two entries); 3/13/06 (two entries); 3/14/06 (two entries); 3/20/06 (two entries). It is not appropriate to use a standard time entry irrespective of the time involved to complete the task, and 42 minutes (0.70 hours) is excessive for preparing largely duplicative transmissions to various courts. Accordingly, I recommend that Murray's time for this work be reduced by 5.0 hours.

I conclude that the remaining hours worked by the professionals at Carlton Fields, in the absence of objection, are reasonable.

    3.    <u>Lodestar Determination</u>.

For the foregoing reasons, I respectfully recommend that the lodestar be calculated as follows:

| PROFESSIONAL | HOURLY RATE | COMPENSABLE HOURS WORKED | TOTAL |
|---|---|---|---|
| Roger S. Goldman | $370.00 | 2.00 | $740.00 |
| Robert N. Gilbert | $370.00 | 29.70 | $10,989.00 |
| Jose A. Loredo | $325.00 | 7.10 | $2,307.50 |
| Niall T. McLachlan | $185.00 | 1.60 | $296.00 |
| Donna K. Knapton | $220.00 | 159.90 | $35,178.00 |
| Michael A. Shafir | $165.00 | 477.40 | $78,771.00 |
| Kasey Peake | $150.00 | 49.10 | $7,365.00 |
| Karen L. Persis | $150.00 | 11.90 | $1,785.00 |
| Olga M. Vieira | $125.00 | 2.10 | $262.50 |
| David L. Luck | $85.00 | 4.10 | $348.50 |
| Christopher R. Clark | $75.00 | 10.40 | $780.00 |
| Leonard Goldstein | $95.00 | 64.50 | $6,127.50 |
| Soraida Smith | $90.00 | 16.20 | $1,458.00 |
| Maureen Murray | $90.00 | 52.8 | $4,752.00 |
| Elena Brown | $90.00 | 3.80 | $342.00 |
| Elizabeth Poveda | $75.00 | 3.10 | $232.50 |
| **GRAND TOTAL** | | | **$151,734.50** |

B.       *Out-of-Pocket Expenses*.

As previously noted, the order of appointment provides that "the Receiver and any person engaged or employed by the Receiver, are entitled to reasonable compensation from the assets of the Receiver Estate, subject to the prior approval of the Court." Doc. No. 15 at 13.  Because out-of-pocket expenses should represent expenditures actually incurred by the Receiver and his counsel, it is reasonable that they should be reimbursed for legitimate, reasonable expenditures.

The Receiver and his law firm seek reimbursement in the amount of $31,480.33.   These expenses are set forth in the Carlton Fields time sheets.   Along with the standard expenses, such as copy costs, postage, and courier service fees, the Receiver also seeks costs for online computer services, litigation support and secretarial overtime.   Carlton Fields time sheets at 2.   The Receiver's motion contains one paragraph supporting his request for expenses, stating that the "expenses were billed at Carlton Fields' customary charges . . . ." Doc. No. 134 at 22.

A law firm's customary charges may not be the same as out-of-pocket expenses incurred. *See, e.g., Lang*, 1997 WL 809200, at *8-14 (finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit).  Some of the charges reflected in the time sheets raise concern about whether the charge is the firm's customary markup rather than actual expenses. *See, e.g.,* 02/27/06 Fax $161.00; 03/03/06 Fax $308.00; 6/23/06 Copying Cost $1,623.40; 9/10/06 Copying Costs $744.60; 8/30/06 Litigation support $6.00; 09/11/06 Litigation support $4.50; 12/31/06 Online Computer Services $1.04; 2/19/07 Online Computer Searches $15.00.  Further, the facsimile and copying costs used by way of example appear to be unreasonable *per se* absent a showing of extraordinary circumstances supporting the need to use facsimile transmission and in-

-19-

house copying rather than more economical services, such as overnight delivery and commercial copying.

The expenses also include secretarial overtime, parking validation, mileage (apparently for the Receiver's trip to and from an airport), and in-house meals for the convenience of the Receiver.  These expenses are within the category of noncompensable overtime.  *See Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12.

The Receiver and his counsel also seek reimbursement for travel, lodging and meals[6] incurred while attending a hearing before this Court and for attending a Court-ordered mediation in Orlando.  *See* Carlton Fields time sheet, 03/15/06 $516.56; 8/27/06 $427.64; 8/27/06 $470.82; 10/23/06 $630.73; 11/22/06 $1,046.40; 11/29/06 $577.50; 1/12/07 $824.66.  Generally, such expenses are not reimbursable unless it is established that there was no one in the central Florida area with sufficient skill and experience to act as Receiver or his counsel.  As there was no such showing,[7] these costs are not compensable.

Accordingly, I recommend that no costs be awarded at this time.  The Receiver and his counsel may renew the requests for an award of costs, with the limitations discussed herein, supported by a sworn statement certifying that the expenses sought are the actual out-of-pocket costs incurred by the Receiver and his law firm.  Any renewed application for costs should also be

---

[6]  The expenses for each trip are grouped, rather than itemized, making it impossible for the Court to determine whether inappropriate charges are included within the total.  Accordingly, for compensable travel, the Receiver and his counsel should provide in future applications for an award of costs the breakdown of the costs incurred.

[7]  I note there are lawyers in Carlton Fields' Orlando office with sufficient expertise to have served in either capacity.

supported by an explanation as to why the use of messenger services, facsimile transmissions, in-house copying and express mail were necessary in each instance.

   D.      *Reductions to the Lodestar*.

   As noted above, the Receiver has recovered $2.5 million for the receivership.  While this amount is not insignificant, it pales in comparison to the $20 million loss to the victims of the fraud.  Thus, the Court must carefully consider whether to reduce the lodestar based on the limited results obtained.

   I am concerned that the SEC appears to have delegated work to the Receiver that it should have performed.  This includes the initial forensic accounting work to trace investor funds to the Defendants' personal use and depositions of Defendant Digges and others witnesses with evidence necessary for the SEC to prevail in its case-in-chief.[8]  While it is appropriate to utilize the services of a receiver to locate and marshal assets, it is not appropriate for the victims of a fraudulent scheme to pay a receiver and his attorneys to perform work that could and should have been performed by the SEC and its staff.  Nevertheless, it is not within the power of this Court to require the SEC to pay the fees of the Receiver, his counsel, or the forensic accountancy firm he retained.  *See SEC v. Independence Drilling Corp.*, 595 F.2d 1006, 1008 (5th Cir. 1979).

   I have already recommended that the Receiver be authorized to pay the forensic accountancy firm and his Maryland local counsel fees and costs in the total amount of $342,272.48.  If the Court authorizes the Receiver to receive $230,895.00, the lodestar fee for his

---

   [8]  If this is not the case, the SEC shall advise the Court in its response to this Report and Recommendation of the work it performed in conjunction with the Receiver or his law firm, so that the Court can determine whether the Receiver has requested fees for work performed by the SEC.

time, and authorizes the Receiver's law firm to receive an additional $151,734.50, the lodestar fee

for the work of its personnel, the Court will have authorized payment of 29% of the currently

anticipated receivership estate, before compensating the Receiver and his law firm for their out-of-

pocket expenses.  Because the receivership estate is not yet closed, and the fees and costs sought to

date are only for work performed and expenses incurred through March 31, 2007, I recommend

that the Court reduce the lodestar, subject to subsequent reconsideration at the close of the

receivership when the total assets of the receivership have been determined.

Accordingly, I recommend that the Court authorize a total payment of 20% of the assets of

the receivership estate at the time this Report and Recommendation is considered.   If the

receivership has recovered $2.5 million as of the Court's consideration of this Report and

Recommendation, 20% of that amount would be $500,000.00.  I recommend that the Court first

authorize payment to the forensic accountancy firm and to Maryland local counsel.  Only then

should the Receiver be authorized to disburse the remainder of the 20% portion of the receivership

estate to himself and his law firm.[9]

## IV.    RECOMMENDATION.

For the reasons set forth in the foregoing report, I respectfully recommend that the

Receiver's Renewed First Interim Application for Allowance and Payment of Fees and Expenses

_____

[9]  I previously put the Receiver on notice that "it is important for the Court to weigh the
results obtained by the Receiver against any fee request to determine whether the fees should be
reduced if the Receiver is not able to recover significant funds for the receivership estate." Doc.
No. 96 at 5.  I cautioned the Receiver that it was his "responsibility to ensure that the work of
attorneys and other professionals [be] limited to that necessary to the assigned task and as
economical as possible to perform the task in order to protect the assets of the receivership estate,
rather than employing a cadre of professional assistants whose fees . . . exceed the receivership's
ability to pay." _Id._ at 5-6.

for February 14, 2006 Through March 31, 2007 (Doc. No. 134) be **GRANTED** in part and

**DENIED** in part.  I further recommend that the Court not permit the Receiver to disburse funds to

his law firm for out-of-pocket expenses.  I further recommend that the Court authorize the

Receiver to disburse no more than 20% of the assets of the receivership estate, and that such

distribution be made first to the forensic accountancy firm, next to Maryland counsel, and the

remainder to the Receiver and his law firm.

      Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

      Recommended in Orlando, Florida on November 16, 2007.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy