# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

          **Plaintiff,**

**-vs-**                                                       **Case No.  6:06-cv-137-Orl-31DAB**

**EDWARD S. DIGGES, JR.,**
**NEXSTAR COMMUNICATIONS, LLC,**
**TMT EQUIPMENT COMPANY, LLC,**
**TMT MANAGEMENT GROUP, LLC,**
**POSA, LLC,**
**POSA TMT, LLC,**
**TELEVEST COMMUNICATIONS, LLC,**
**TELEVEST GROUP, LLC,**
**SPIN DRIFT, LLC,**

          **Defendants,**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **RECEIVER'S SECOND APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES FOR SEPTEMBER 1, 2007 THROUGH JUNE 30, 2008 (Doc. No. 199)**
>
> **FILED:** August 7, 2008
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** as set forth herein.

On February 2, 2006, and the Securities and Exchange Commission commenced this action ("SEC Action"), and in November 2006 filed its Amended Complaint alleging that Defendant Edward

S. Digges, Jr. and his affiliates engaged in a fraudulent securities "Ponzi" scheme by convincing hundreds of investors that they were investing in point of sale credit card terminals. In reality, the investment was nothing more than a $22 million Ponzi scheme that paid earlier investors with later investors' money. Doc. No. 199. On February 14, 2006, the Court entered an Order freezing assets along with other relief, and appointed James D. Silver as the Receiver in this action. Doc. No. 13.

The Receiver now seeks approval of his second application[1] for allowance and payment of fees totaling $202,494.50 and unreimbursed expenses totaling $4,023.39 collectively for services performed by the Receiver between September 2007 and June 30, 2008 and by the Receiver and the Receiver's Counsel (referred to collectively for purposes of this Motion as "the Receiver"), Conrad & Scherer between January 4, 2008 and June 30, 2008. Doc. No. 199. According to the Receiver, the balance in the Receivership bank account as of August 5, 2008 is $2,035,924.78, which he believes to be more than sufficient to pay the fees and expenses requested.

The fees requested consist of (i) 295.2 hours of time in the Hoffman litigation resulting in fees of $81,740, (ii) 546.40 hours in the main receivership, resulting in fees of $113,470; nearly half of the hours is for the time of paralegals whose time is being billed at $85.00 an hour, and (iii) 23.3 hours in the continued prosecution of the Haug litigation resulting in total fees of $7,284.50[2].

---

[1]The first application was considered by Magistrate Judge Karla R. Spaulding, and a Report and Recommendation was issued. Doc. No. 159. Following objections, the District Court conducted an evidentiary hearing and made certain rulings. Doc. No. 186. The case was reassigned on February 7, 2008, and the Second Application was referred to this Court for a report and recommendation on August 27, 2008. The Court has applied the District Judge's prior rulings on reimbursement of expenses and fees, as previously awarded. *See* Doc. No. 186.

[2]The procedural history of the case and the law applicable to payment of fees to receivers are set out in detail in Judge Spaulding's Report and Recommendation on the Receiver's Renewed First Interim Application for payment of fees. *See* Doc. No. 159 at 2-6.

*Hourly Rate*

The Receiver explains that this is a very document intensive case and also includes dealing with numerous investors and 255 investor claims; thus, the Receiver states he endeavored to delegate as much work as practicable to paralegals at the $85 per hour rate. More than one-third of the hours included in the Application (more than 300 hours), and nearly half the hours billed regarding the main Receivership, which includes the administration of the claims process, is paralegal time. The Receiver was able to delegate a significant amount of work in the claims administration process to primarily one paralegal, who, under the supervision of the Receiver and other counsel, was able to perform a significant amount of work at a greatly reduced rate relative to the attorneys' hourly rates.

District Judge Presnell held a hearing on the Receiver's previous application for attorney's fees and expenses and entered an Order on January 8, 2008. Doc. No. 186. The level of staffing on the case for the period in question, which was a principal issue Judge Presnell discussed at the evidentiary hearing on the First Application for fees, is consistent with (and more conservative than) the staffing levels he outlined as appropriate for this case: one senior litigator (in addition to the Receiver) compensated at $300/hour, a senior associate compensated at $175/hour, a two-year associate at $150/hour; and two paralegals at $90-95/hour. Doc. No. 199-4 at 8-10.

The Receiver seeks reimbursement at the same rate that Judge Presnell previously awarded him, *i.e.*, a rate of $325 per hour. *See* Doc. No. 199-4 at 9. Judge Presnell also found that a reasonable rate for a senior litigation attorney practicing at least ten years is $300.00 per hour. *See* Doc. No. 199-4 at 9. Thus, Mr. Scherer, who has been practicing fourteen years and is the firm's managing partner, is similarly entitled to an hourly rate of $295.00 per hour. The hourly rate of $175.00 for Mr. Di Pietro, practicing three years (with 70 jury trials as an Assistant State Attorney) is consistent with the Court's ruling with respect to the hourly rate awarded previously to another

associate (Mr. Sharif) that Judge Presnell awarded. *See* Doc. No. 199-4 at 10. The paralegal rate of $85.00 per hour, is less than the paralegal rate of $90.00 to $95.00 that Judge Presnell previously awarded as reasonable. *See* Doc. No. 199-4 at 10.

*Number of hours*

The Receiver has incurred more than eight-hundred and fifty (850) hours of attorney and paralegal time establishing and implementing a claims procedure, reviewing and objecting to voluminous claims, resolving claims disputes and reviewing and analyzing the relevant documentation and bank data, obtaining Court approval to make a distribution solely to investors of $1 million, implementing the previously negotiated settlement with the Digges related parties and the settlement with Rick McGonnigal, prosecuting litigation against Hoffman and continuing to pursue the litigation against Haug, and in all other aspects of administering the Receivership being overseen by the Court.

The Receiver provided a detailed summary of the principal tasks sought to be compensated in the Application. *See* Doc. No. 199-3. ("Detailed Summary"). As the Receiver explained to Judge Presnell at the evidentiary hearing, his primary responsibility as Receiver is to "follow the money" to recapture funds fraudulently transferred and to maximize investors' recovery; thus he is seeking reimbursement for hours in review of issues regarding tax filings of Receiver Entities and related tax issues; review of trusts, wills, powers of attorney, death certificates and other legal documents from investors to ascertain legal entitlement to distribution of monies from the Receivership; and review of various spreadsheets from the bank reconstruction to determine the validity and accuracy of investors claims.

Much of the work expended in the sixty-six page billing statement was spent negotiating for, obtaining Court approval of, and obtaining payment of settlements with Defendant Digges and related

parties, as well as recovery of funds transferred fraudulently to Rick McGonnigal, marketing director of the receivership entities (and the father of Digges' step-children), to Louis C. Haug, the chief financial officer of a number of the Receiver Entities.[3] The Receiver also pursued an ancillary action against Paul Hoffman[4] seeking approximately $7 million in damages, allegedly looted from the entitites for the benefit of Digges and his family members during the time Hoffman is alleged to be a fiduciary; at least $625,000 was paid at his insistence to cover his taxes. Doc. No. 199 at 8. The Receiver seeks reimbursement for hours spent researching and drafting a complaint against Hoffman, preparing for mediation, successfully opposing a motion to dismiss asserting various grounds, and drafting an amended complaint. The Receiver prepared for and attended the deposition of an individual investor in Texarkana, TX who had direct knowledge regarding issues in the *Hoffman* litigation. The litigation against Hoffman involved numerous factual and legal issues and placed at issue the dealings and financial condition of a myriad of related entities and individuals that engaged in thousands of transfers, many of them convoluted, using more than one-hundred bank accounts; it also dealt with a number of legal issues against a very involved factual backdrop covering an extended time frame, covered by more than 100 banker's boxes of documents.

The Receiver has also pursued litigation against Haug; he prepared for and attended the expert witness's deposition; reviewed documents with expert witness prior to deposition; researched legal issues and drafted a motion to amend the complaint originally filed against Haug; drafted a motion for clerk's default; prepared a case management report on Haug's ancillary litigation; assisted in the drafting of an expert report on damages for a motion for final judgment against Haug. The Receiver

---

[3] The Receiver also included 25 hours in objecting to portions of a Report and Recommendation concerning fees. Doc. No. 159. Judge Presnell set the objections for evidentiary hearing, ultimately awarding fees and costs of $509,110 from the $551,951 originally sought. *See* Doc. No. 186.

[4] *See* Case No. 6:07-cv-1670-Orl-31DAB.

is continuing to actively prosecute claims against Haug, have obtained a clerk's default against Haug, and will seek a final judgment against him.

The Receiver's other major effort was in implementing a claims process to distribute the funds recovered; the claims process is necessary to properly calculate the allowed amount of each investor's claim and the total amount of all investors' claims. Doc. No. 199 at 2. The Receiver formulated an equitable claims procedure for investors of the Receiver Entities; drafted motions to the Court to gain approval to utilize the claims form and proposed claims procedures; communicated with investors concerning the Receivership and various issues relating to investor claims and procedures regarding submission of claims – including setting up a website to keep investors informed. The Receiver mailed out the approved claim form to 300 investors, analyzed 255 claims and supporting documentation submitted by investors, submitted approximately eight-five (85) objections to the claims submitted by investors; evaluated approximately sixty (60) responses from investors relating to the Receiver's objections; and individually contacted approximately thirty (30) investors regarding the Receiver's claims objections in an effort to resolve the claims objections and obtained any additional information necessary to make a final recommendation regarding the claims. Through the Receiver's efforts, the number of disputed claims has been reduced to less than ten. Doc. No. 199 at 3.

Within the scope of his broader responsibilities, the Receiver responded to subpoenas and inquires from various regulators and criminal authorities, including preparing and gathering a vast volume of documents subpoenaed by a Federal Grand Jury in Maryland. He worked with Texas securities regulators regarding issues involving Texas investors and successful criminal prosecution of a broker involved in the scheme; he also reviewed various documents relating to Patrick McKnight,

a prior broker for one of the Receiver's entities. Responding to extensive document requests required the Receiver to review voluminous documents in formulating appropriate responses.

The Receiver describes the work performed in the time sheets submitted with the motion. Based on the Court's review of the time sheet entries, the hours spent on the described tasks was reasonable. The Receiver states that he has carefully reviewed the time entries and have exercised billing judgment by writing off or writing down time where appropriate. The SEC has not objected to reimbursement of the time sought. Doc. No. 199 at 19.

Therefore, it is respectfully **RECOMMENDED** that the District Court award attorney's fees of **$202,494.50**, based on the hours and rates as set forth below:

| Timekeeper | Hours-Main[5] | Hoffman[6] | Haug[7] | Total Hrs | Rate | Total Fees |
|---|---|---|---|---|---|---|
| Silver (Receiver) | 278.4 | 171.7 | 13.7 | 463.8 | $325 | $150,735.00 |
| Scherer | 1.0 | 73.6 | 9.6 | 84.2 | $295 | $24,839.00 |
| DiPetro | 0.0 | 3.6 | 0.0 | 3.6 | $175 | $630.00 |
| Russell | 16.5 | 16.2 | 0.0 | 32.7 | $85 | $2,779.50 |
| Norona | 250.5 | 26.1 | 0.0 | 276.6 | $85 | $23,511.00 |
| Total | 546.4 | 295.2 | 23.3 | 864.90* | | **$202,494.50** |

\* Total includes four hours of unbilled time.  *See* Doc. No. 199-2 at 55.

*Blended rate cap*

According to the Receiver, the fee rate is capped at an overall blended hourly rate of $280 per hour based on agreement between the SEC and the Receiver. Based on the figures in the chart above,

---

[5] Doc. No. 199-2 at 21-37.  The Court would have appreciated a consolidated formulation of all hours on the various cases combined.

[6] Doc. No. 199-2 at 39-55.

[7] Doc. No. 199-2 at 57-60.

the blended hourly rate for the current Application is $234.12, when the total fees requested of $202,494.50 is divided by the 864.90 hours of attorney and paralegal time expending during the current application period. The blended rate is within the parameters agreed to by the SEC.

*Expenses*

It is further respectfully **RECOMMENDED** the Receiver be allowed $4,023.39 for reimbursement of expenses. Consistent with those expenses allowed following the evidentiary hearing on the First Application, *see* Doc. No. 186, the Receiver has sought reimbursement only of those categories that Judge Presnell previously allowed: copying charges, telephone, travel for hearings in Orlando, specialized computer assistance. Doc. No. 199-2 at 37-38, 55-56, 61.

*Priority of payment by stipulation*

It is further respectfully **RECOMMENDED** that the Receiver be authorized to pay Conrad & Scherer the fees and expenses approved by the Court under the Second Application, with 80% of the fees and 100% of the costs to be paid forthwith upon entry of an Order approving the Second Application, the Receiver be authorized, without the need for further Court order, to pay the remaining 20% of the fees awarded as and when such fees are payable pursuant to the agreement between Conrad & Scherer and Carlton Fields set forth in the Substitution Stipulation previously approved by this Court. *See* Doc. No. 148.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 26, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy